UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
————————————————X
EILEEN MENDEZ, as Parent and Natural
Guardian of A.C., and EILEEN MENDEZ,
Individually,

                         Plaintiff,                          Civ. No. 1:25-cv-01096-CM

-against-

MELISSA AVILES-RAMOS, in her official
capacity as Chancellor of the New York City
Department of Education, and the NEW YORK
CITY DEPARTMENT OF EDUCATION,

                         Defendants.
————————————————X


## PLAINTIFF'S MEMORANDUM OF LAW IN
## <u>OPPOSITION TO DEFENDANTS' MOTION TO DISMISS</u>


Kenneth Willard
Liberty and Freedom Legal Group, Ltd.
*Attorneys for the Plaintiff(s)*
105 East 34th Street, Suite #190
New York, New York 10016
hearings@pabilaw.org

## **TABLE OF CONTENTS**

*Page(s)*

PRELIMINARY STATEMENT ............................................................................... 1

LEGAL STANDARD ............................................................................................ 4

1. **Standard in Deciding Fed. R. Civ. P. 12(b)(1) Motions** ……………………………… 4

2. **Standard in Deciding Fed. R. Civ. P. 12(b)(6) Motions** ……………………………… 5

LEGAL FRAMEWORK OF THE IDEA ................................................................ 5

ARGUMENT ........................................................................................................ 8

    I.      **PLAINTIFF'S CLAIMS ARE NOT MOOT** ……………………………………… 8

        A. **Plaintiff's Claims for Nominal Damages under § 1983, Attorneys' Fees and Injunctive Relief Keep this Action Alive** ……………………………………… 10

            i. **Plaintiffs' Claim for Nominal Damages under § 1983 Survives** …… 11

           ii. **Plaintiffs' Claim for Declaratory Judgment Survives** ……………… 12

          iii. **Plaintiffs' Claim for Attorneys' Fees Survives** ……………………… 13

    II.     **LATE FEES** …………………………………………………………………... 14

        A. **The Exhaustion of Remedies Requirement Does Not Apply to Late Fees in this Case** ……………………………………………………… 14

        B. **Plaintiffs Are Entitled to Late Fees under the Relevant Contracts** ……….. 19

CONCLUSION ..................................................................................................... 21

## Table of Authorities

**Cases**

*A.K v. Westhampton Beach Sch. Dist.*, No. 17-CV-0866
(JS)(SIL), 2019 U.S. Dist. LEXIS 167085 (E.D.N.Y. Sep. 27, 2019) ........................................ 14

*APWU v. Potter*,
343 F.3d 619 (2d Cir. 2003) ........................................................................................................ 4

*Acumen Re Mgmt. Corp. v. Gen. Sec. Nat. Ins. Co.*, No. 09 Civ. 01796,
2012 U.S. Dist. LEXIS 127809, 2012 WL 3890128 (S.D.N.Y. Sept. 7, 2012) ......................... 11

*Adamu v. Pfizer, Inc.*,
399 F.Supp.2d 495 (S.D.N.Y.2005) ............................................................................................. 4

*Already, LLC v. Nike, Inc.*,
568 U.S. 85, 133 S. Ct. 721 (2013) .............................................................................................. 9

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..................................................................................................................... 5

*Baldessarre v. Monroe-Woodbury Cent. Sch. Dist.*,
820 F. Supp. 2d 490 (S.D.N.Y. 2011) ...................................................................................... 4, 5

*Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cnty. v. Rowley*,
458 U.S. 176 (1982) ..................................................................................................................... 6

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ..................................................................................................................... 5

*Boffa v. Banks*,
2025 U.S. Dist. LEXIS 16234 (S.D.N.Y. Jan. 29, 2025) ..................................................... 16, 17

*Bradley v. Coughlin*,
671 F.2d 686 (2d Cir. 1982) ...................................................................................................... 12

*Carey v. Piphus*,
435 U.S. 247, 98 S. Ct. 1042, 55 L. Ed. 2d 252 (1978) ............................................................ 12

*Cerra v. Pawling Cent. Sch. Dist.*,
427 F.3d 186 (2d Cir. 2005) ........................................................................................................ 6

*Chafin v. Chafin*,
568 U.S. 165, 133 S. Ct. 1017, 185 L. Ed. 2d 1 (2013) .............................................................. 9

*Diaz v. United States HUD*,
No. 23-397, 2024 U.S. App. LEXIS 5620 (2d Cir. Mar. 8, 2024) ............................................. 13

*Fantasia v. Montefiore New Rochelle, No. 19 CV 11054*
(VB), 2022 U.S. Dist. LEXIS 107935 (S.D.N.Y. June 16, 2022) ............................................... 12

*FB v. N.Y.C. Dep't of Educ.,*
923 F. Supp. 2d 570 (S.D.N.Y. 2013) .......................................................................... 15, 16, 17

*F.O. v. New York City Dep't of Educ.,*
976 F. Supp. 2d 499 (S.D.N.Y. 2013) ...................................................................................... 7

*Frank G. v. Bd. of Educ. of Hyde Park,*
459 F.3d 356 (2d Cir. 2006) ...................................................................................................... 6

*Florence Cnty. Sch. Dist. Four v. Carter By & Through Carter,*
510 U.S. 7 (1993) ....................................................................................................................... 7

*Flores v. S. Peru Copper Corp.,*
414 F.3d 233 (2d Cir. 2003) ...................................................................................................... 4

*Genesis Healthcare Corp. v. Symczyk,*
569 U.S. 66, 133 S. Ct. 1523, 185 L. Ed. 2d 636 (2013) ...................................................... 8, 9

*Hayden v. Paterson,*
594 F.3d 150 (2d Cir. 2010) ...................................................................................................... 5

*Hidalgo v. Porter,*
21-cv-10794 (JGK) 2023 U.S. Dist. LEXIS 226812 (Dec. 20, 2023) ........................... 17, 18, 19

*Hoffman v. Am. Inst. of Indian Stud.,*
No. 1:21-cv-01105 (BKS/ATB), 2024 U.S. Dist. LEXIS 123611 (N.D.N.Y. July 15, 2024) ..................... 12

*J.S. ex rel. N.S. v. Attica Cent. Sch.,*
386 F.3d 107 (2d Cir. 2004) ...................................................................................................... 4

*Knox v. Service Employees International Union,*
567 U.S. 298, 132 S. Ct. 2277, 183 L. Ed. 2d 281 (2012) ...................................................... 9

*Krechmer v. Tantaros,*
747 F. App'x 6 (2d Cir. 2018) .......................................................................................... 12, 13

*Lamberty v. Conn. State Police Union,*
No. 3: 15-cv-378 (VAB), 2018 U.S. Dist. LEXIS 179805 (D. Conn. Oct. 19, 2018) ................ 8, 9

*Lynch v. City of New York,*
952 F.3d 67 (2d Cir. 2020) ........................................................................................................ 5

*M.H. ex rel. K.H. v. Mount Vernon City Sch. Dist.,*
No. 13 CV 3596 VB, 2014 WL 901578 (S.D.N.Y. Mar. 3, 2014) .............................................. 5

*M.O. v. New York City Dep't of Educ.*,
   793 F.3d 236 (2d Cir. 2015) .......................................................................................... 7

*Marino v. N.W. Mut. Life Ins. Co.*,
   2001 U.S. Dist. LEXIS 2670, No. 00 Civ. 3212 (MBM),2001 WL 262574 (S.D.N.Y. Mar. 14, 2001) ...... 13

*Noury v. St. Paul Fire & Marine Ins. Co.*,
   2004 U.S. Dist. LEXIS 27319 (S.D.N.Y. Mar. 25, 2004) .......................................... 14

*Okla. Police Pension & Ret. Sys. v. United States Bank Nat'l Ass'n*,
   291 F.R.D. 47 (S.D.N.Y. 2013) .................................................................................... 12

*Parochial Bus Sys. v. Bd. of Educ. of City of N.Y.*,
   60 N.Y.2d 539, 458 N.E.2d 1241, 470 N.Y.S.2d 564 (1983) .................................... 17

*Paulino v. N.Y.C. Dep't of Educ.*,
   2024 U.S. Dist. LEXIS 132633 (S.D.N.Y. July 24, 2024) ........................... 18, 19, 21

*Picture Pats., LLC v. Aeropostale, Inc.*,
   788 F. Supp. 2d 127 (S.D.N.Y. 2011) ............................................................................ 4

*R.E. v. New York City Dep't of Educ.*,
   694 F.3d 167 (2d Cir. 2012) .......................................................................................... 6

*Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n*,
   896 F.2d 674 (2d Cir. 1990) .......................................................................................... 4

*S.Y. v. New York City Dep't of Educ.*,
   210 F. Supp. 3d 556 (S.D.N.Y. 2016) .................................................................. 6, 7, 8

*Uzuegbunam v. Preczewski*,
   592 U.S. 279, 141 S. Ct. 792 (2021) ........................................................................... 12

**Statutes**

20 U.S.C. § 1232 ................................................................................................................. 1

20 U.S.C. § 1400 ................................................................................................................. 6

20 U.S.C. § 1401 ................................................................................................................. 1

20 U.S.C. § 1412 ................................................................................................................. 7

20 U.S.C. § 1415 ......................................................................................... 1, 8, 11, 14

28 U.S.C. § 1331 ................................................................................................................. 8

28 U.S.C. § 2201 ........................................................................................................... 1, 13

28 U.S.C. § 2202 ........................................................................................................... 1, 13

42 U.S.C. § 1983 ............................................................................1, 2, 10, 11, 12, 13

N.Y. Educ. Law § 4402 ..................................................................................... 6

N.Y. Educ. Law § 4404 ..................................................................................... 8

**Other**

34 C.F.R. § 300.304 ..................................................................................... xi, 7

34 C.F.R. § 300.502 ......................................................................................... xi

34 C.F.R. § 300.514 ......................................................................................... xi

34 C.F.R. § 300.517 .................................................................................. xi, 1, 8

34 C.F.R. Part 300 ........................................................................................... 1

Fed. R. Civ. P. 12 ......................................................................................... 4, 5

Fed. R. Civ. P. 57 .......................................................................................... 12

N.Y. Comp. Codes R. &amp; Regs. tit. 8, § 200.4(b)(6)(vii) ................................. 7

N.Y. Comp. Codes R. &amp; Regs. tit. 8, § 279.10(b) .......................................... 8

## PRELIMINARY STATEMENT

Plaintiff, Eileen Mendez, as parent and natural guardian of A.C.[1], and Eileen Mendez Individually ("Plaintiffs" or "Parents"), respectfully submits this Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Complaint.

In her Complaint, Plaintiffs requested the Court issue a preliminary injunction requiring Defendants Melissa Aviles-Ramos, in her official capacity as Chancellor of the New York City Department of Education, and the New York City Department of Education (collectively, "Defendants" or the "DOE") comply with the administrative orders regarding A.C.'s 2024-2025 Extended School Year ("ESY"). Plaintiffs also requested the Court issue a judgement in favor of Plaintiff and against Defendants finding, *inter alia*, that Defendants failed to implement said orders, that in doing so they deprived Plaintiffs and A.C. of rights guaranteed under federal and state law while acting under color of law, and awarding Plaintiffs late fees, nominal damages, Plaintiffs costs, attorneys' fees, and "fees on fees," and declaring that Defendants violated the rights of Plaintiffs and A.C., and granting other such, further, and different relief as the Court may deem just, proper, and equitable. These prayers for relief were based on three causes of action and statutes including 20 U.S.C. § 1401, *et seq*., the federal regulations promulgated thereunder, 34 C.F.R. Part 300, Article 89 of the New York State Education Law, the Regulations of the Commissioner of Education, Part 200, 42 U.S.C. § 1983, 20 U.S.C. § 1415(i)(3)(B)(I); 34 C.F.R. § 300.517(a)(1)(i), 28 U.S.C. §§ 2201 and 2202.

Now that Defendants have belatedly funded A.C.'s placement, meeting some of the requests that Plaintiff has made, they have filed a Motion to Dismiss the Complaint under Rules 12(b)(1)

---

[1] Although the full name of the Parents is used in this Memorandum of Law, pursuant to the Family Educational Rights and Privacy Act (FERPA), 20. U.S.C. § 1232(g) (and 34 C.F.R. Part 99), Plaintiffs are using the initials of the Student to protect their privacy.

and 12(b)(6) hoping that the Court will simply ignore several of the causes of actions and prayers for relief outstanding in the Complaint. Among those that are still pending are Plaintiffs' request for declaratory judgement, reasonable costs and attorneys' fees for Plaintiffs as the prevailing party in the underlying administrative actions, reasonable costs and attorneys' fees for prosecuting this federal action, damages for Plaintiffs and A.C. in the amount of $1.00 or some other nominal amount for DOE's violation of their rights while acting under color of law, and late fees per the relevant contracts. To this end, Defendants ignore many of these outstanding issues, and in their Memorandum of Law focus on the sole outstanding issue of late fees. However, their arguments are flawed, as the Court does have subject-matter jurisdiction, and late fees are a claim upon which relief can be granted.

In its memorandum of law, the DOE makes two salient points. The first is that Plaintiffs have failed to exhaust their administrative remedies. Focusing exclusively on the late fees claim, and, as pointed out above, completely ignoring the other claims still pending before this Court – including, *inter alia*, a claim for nominal damages under § 1983, attorney's fees, and declaratory judgment relief – Defendants argue that Plaintiff's failure to exhaust remedies on the issue of whether they are entitled to late fees under the relevant administrative orders. However, this argument ignores the plain text of the orders themselves.

The IHO decision clearly awarded the value of the contract as long as Defendants paid within 30 days of the issuance of the order. The SRO decision never disturbed this part of the IHO's findings, which became final and binding on the parties. By its own admission, the DOE failed to heed this 30-day time limit, which led directly to the accrual of late fees. The IHO's decision therefore directly contemplated the existence and application of late fees and there was therefore no need to appeal a decision that Plaintiff was successful on. Even if the IHO's decision

could not be said to address the issue directly, the IHO's silence on the matter is not a basis to compel Plaintiffs to exhaust their remedies on an issue that was never addressed.

Moreover, generally speaking, when Plaintiffs have been awarded the relief they sought, there is no need for them to exhaust remedies. Here, Plaintiffs got exactly the relief they requested when the IHO found that the DOE had denied A.C. a free and appropriate public education ("FAPE"), that the International Institute for the Brain ("iBRAIN") was an appropriate placement, and that the equities favored Plaintiffs in full reimbursement, with the exception of transportation costs which reduced on the equities to services actually utilized. However, the SRO reversed that very decision, so Plaintiffs prevailed on all three prongs of the *Burlington/Carter* test. Having received exactly the relief they requested, there was simply no need to exhaust their remedies. Plaintiffs cannot be expected to divine every single issue the DOE may later object to, seize that as an opportunity to decide the issue, and have every issue decided *a priori*. Having failed to be notified of the basis of any objection, it was not then Plaintiffs' burden to identify it beforehand. Plaintiffs won, period.

Defendants' second salient argument is that Plaintiffs are not entitled to late fees under the IHO and SRO decisions. But, as noted above, as to tuition reimbursement, the IHO decision is clear that Plaintiffs are entitled to tuition under the relevant iBRAIN enrollment agreement, and that agreement expressly provides for late fees. The IHO decision specifically contemplates these fees because it states that Plaintiffs must be reimbursed within 30 days of the decision. Having failed to do so, by operation of the contract, late fees apply from that day forward. Plaintiffs' claim for late fees is even stronger in the context of transportation. The SRO decisions specifically reversed the IHO who awarded reimbursement of transportation costs for services actually rendered, and chose instead to rely exclusively on the relevant transportation agreement as the sole

source of liability for the DOE.  Like the iBRAIN agreement, the relevant transportation agreement

contains a provision for late fees.  Thus, the DOE owes those late fees as well.  In all respects,

Defendants' arguments have no merit and their motion to dismiss should be denied.

## LEGAL STANDARD

### 1.  Standard in Deciding Fed. R. Civ. P. 12(b)(1) Motions

"A case is properly dismissed for lack of subject-matter jurisdiction under Rule 12(b)(1)

when the district court lacks the statutory or constitutional power to adjudicate it." *Baldessarre v.*

*Monroe-Woodbury Cent. Sch. Dist.*, 820 F. Supp. 2d 490, 499 (S.D.N.Y. 2011), aff'd sub nom.

*Baldessarre ex rel. Baldessarre v. Monroe-Woodbury Cent. Sch. Dist.*, 496 F. App'x 131 (2d Cir.

2012) (unpublished) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)).

 In *Baldessarre ex rel. Baldessarre* Judge Karas recognized that:

> "When a defendant moves to dismiss under Rule 12(b)(1) for lack of subject-matter
> jurisdiction, and also moves to dismiss on other grounds such as Rule 12(b)(6) for failure
> to state a claim upon which relief can be granted, the Court must consider the Rule 12(b)(1)
> motion first. See *Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d
> Cir. 1990); *Adamu v. Pfizer, Inc.*, 399 F.Supp.2d 495, 500 (S.D.N.Y.2005). In reviewing a
> motion to dismiss under Rule 12(b)(1), the Court "must accept as true all material factual
> allegations in the complaint, but [it is] not to draw inferences from the complaint favorable
> to Plaintiffs." *J.S. ex rel. N.S. v. Attica Cent. Sch*., 386 F.3d 107, 110 (2d Cir. 2004). When
> considering a motion to dismiss, courts are generally limited to examining the sufficiency
> of the pleadings, but, where a party challenges the court's subject-matter jurisdiction, "the
> court may resolve disputed jurisdictional fact issues by reference to evidence outside the
> pleadings*." Flores v. S. Peru Copper Corp.*, 414 F.3d 233, 255 (2d Cir. 2003) n. 30 (2d
> Cir.2003) (internal quotation marks omitted); see also *Picture Pats., LLC v. Aeropostale,*
> *Inc.*, 788 F. Supp. 2d 127, 134 (S.D.N.Y. 2011), aff'd, 469 F. App'x 912 (Fed. Cir. 2012)
> (where there is a question as to the Court's subject-matter jurisdiction, "the Court has the
> power and the obligation to consider matters outside the pleadings, such as affidavits,
> documents, and testimony, to determine whether jurisdiction exists."). The party asserting
> jurisdiction, in this case Plaintiffs, has the burden of showing by a preponderance of the
> evidence that the Court has jurisdiction. See *APWU v. Potter*, 343 F.3d 619, 623 (2d Cir.
> 2003)."

*Baldessarre v. Monroe-Woodbury Cent. Sch. Dist.*, 820 F. Supp. 2d 490, 499 (S.D.N.Y. 2011), *aff'd sub nom. Baldessarre ex rel. Baldessarre,* 496 F. App'x 131 (unpublished).

### 2.  Standard in Deciding Fed. R. Civ. P. 12(b)(6) Motions

The function of a motion to dismiss is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *M.H. ex rel. K.H. v. Mount Vernon City Sch. Dist.*, No. 13 CV 3596 VB, 2014 WL 901578, at *4 (S.D.N.Y. Mar. 3, 2014) (quoting *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities Inc.*, 748 F.2d 774, 779 (2d Cir. 1984) (internal quotation marks omitted)).

In *M.H. ex rel. K.H.,* 2014 WL 901578, at *4 Judge Briccetti noted:

"In deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court evaluates the sufficiency of the Complaint under the "two-pronged approach" announced by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss. *Id.* at 678; *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010). Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Ashcroft*, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion to dismiss, the allegations in the Complaint must meet a standard of "plausibility." *Id.* at 678; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

*M.H. ex rel. K.H.,* 2014 WL 901578, at *4.

Under a Rule 12(b)(6) motion, the Court's task is to assess the legal feasibility of the Complaint; it is not to assess the weight of the evidence that might be offered on either side. *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020). Determining whether a complaint states a claim is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. *Ashcroft*, 556 U.S. at 679.

### **LEGAL FRAMEWORK OF THE IDEA**

Congress enacted IDEA with the goals of (1) promoting the education of children with disabilities by ensuring that they receive an education that adequately addresses their needs and (2) protecting the rights of students with disabilities and their parents. See 20 U.S.C. § 1400(d)(1)(A)-(B); *see also Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cnty. v. Rowley*, 458 U.S. 176, 206–07 (1982). IDEA requires state and local governments to provide all children with disabilities with a free and appropriate public education ("FAPE"), which must be "'reasonably calculated to enable the child to receive educational benefits.'" *Frank G. v. Bd. of Educ. of Hyde Park*, 459 F.3d 356, 363 (2d Cir. 2006)(quoting *Walczak v. Fla. Union Free Sch. Dist.*, 142 F.3d 119, 122 (2d Cir. 1998)) (internal citation and quotation marks omitted).

For a school district to provide a student with a FAPE, it must (1) comply with IDEA's procedural requirements and (2) develop an Individualized Education Program ("IEP") reasonably calculated to enable the student to receive educational benefits. See *Board of Educ. of Hendrick Hudson Central School Dist., Westchester County,* 458 U.S. at 206–07; *Cerra v. Pawling Cent. Sch. Dist.*, 427 F.3d 186, 192 (2d Cir. 2005). A student's IEP is reviewed annually and includes a detailed description of the student's current educational performance, annual and short-term educational goals, and specific instructional techniques and related services that will allow the student to achieve those goals. *S.Y. v. New York City Dep't of Educ.*, 210 F. Supp. 3d 556 (S.D.N.Y. 2016).

In New York City, a CSE convened by DOE creates IEPs. The CSE consists of a team of parents, educators, and specialists responsible for examining the student's current performance and needs, as well as determining an education program that will provide that student with a FAPE. N.Y. Educ. Law § 4402(1)(b)(1) (McKinney); *R.E. v. New York City Dep't of Educ.*, 694 F.3d 167, 175 (2d Cir. 2012). When evaluating the student to create their IEP, the CSE must assess the student

6

in all areas related to the student's suspected disability, such as health, vision, hearing, social and emotional status, general intelligence and academic performance, communicative status, and motor abilities. N.Y. Comp. Codes R. & Regs. tit. 8, § 200.4(b)(6)(vii); see also 34 C.F.R. § 300.304(c)(4).

IDEA specifies that a disabled student's IEP must be based on the student's specific and unique educational needs, not the student's disability classification. *See* 20 U.S.C. § 1412(a)(3); *F.O. v. New York City Dep't of Educ.*, 976 F. Supp. 2d 499, 525 (S.D.N.Y. 2013). While school districts need not list a specific school location in a student's IEP, a district's school assignment for a student must conform to IEP recommendations. *M.O. v. New York City Dep't of Educ.*, 793 F.3d 236, 244 (2d Cir. 2015).

When parents are dissatisfied with the district's IEP and believe DOE denied their child a FAPE, IDEA allows them to unilaterally place their child in a private school and seek tuition reimbursement from their local school district. *S.Y.*, 210 F. Supp. 3d 556 (citing *M.O.,* 793 F.3d at 239). The general standard for determining whether parents are entitled to district reimbursement is the *Burlington/Carter* test. The two prongs of the *Burlington/Carter* test that must be proven for an administrative officer or Court to order reimbursement are: (1) the educational program offered by the school district did not offer the student a FAPE ("Prong I"), and (2) the private school alternative selected by the parents is appropriate to meet the student's needs ("Prong II"). *See Florence Cnty. Sch. Dist. Four v. Carter By & Through Carter*, 510 U.S. 7 (1993). Under the third Prong of the Burlington/Carter test, the plaintiffs' award may be reduced based on "equitable considerations." ("Prong III"). *Id.*

Under N.Y. Educ. Law, the school district bears the initial burden of proving the adequacy of the school district's IEP. *S.Y.*, 210 F. Supp. 3d 556 (citing *R.E.*, 694 F.3d at 184–85) (footnote

omitted); N.Y. Educ. Law § 4404(1)(c) (McKinney)). After an initial Impartial Hearing on the matter, either party may appeal the Decision of the Impartial Hearing Officer ("IHO") to New York's Office of State Review ("OSR"). If a State Review Officer ("SRO") determines that additional evidence is necessary, it may seek additional testimony or documentary evidence. N.Y. Comp. Codes R. & Regs. tit. 8, § 279.10(b). If either party is not satisfied with the SRO's Decision, that party may commence an action in state or federal court for further review. *S.Y.*, 210 F. Supp. 3d 556 (citing *R.E.*, 694 F.3d at 175 (citing 20 U.S.C. § 1415(i)(2)(A))). A state or federal court will decide whether the school district's proposed IEP is reasonably calculated to allow the student to receive educational benefits and whether the parents' choice of private school placement was appropriate. *Id.*; *See Frank G.*, 459 F.3d at 364. The District Court further has jurisdiction over matters arising out of federal laws under 28 U.S.C. § 1331, and under the IDEA is able to grant reasonable attorneys' fees to the prevailing party in the underlying administrative action. 20 U.S.C. § 1415(i)(3)(B)(I) and 34 C.F.R. § 300.517(a)(1)(i)).

## ARGUMENT

### I.    PLAINTIFF'S CLAIMS ARE NOT MOOT

Defendants argue that the DOE's payment of tuition and transportation moots Plaintiff's claims and therefore the action must be dismissed.  For the reasons set forth below, this argument has no merit.

"Mootness is a threshold issue that courts must address when changes in circumstances occur that are claimed to moot a case." *Lamberty v. Conn. State Police Union*, No. 3:15-cv-378 (VAB), 2018 U.S. Dist. LEXIS 179805, at *11 (D. Conn. Oct. 19, 2018)(citing *United States v. Juvenile Male*, 564 U.S. 932, 935-36, 131 S. Ct. 2860, 180 L. Ed. 2d 811 (2011)); *see also Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 71, 133 S. Ct. 1523, 185 L. Ed. 2d 636 (2013)("In order

to invoke federal-court jurisdiction, a plaintiff must demonstrate that he possesses a legally cognizable interest, or personal stake, in the outcome of the action. This requirement ensures that the Federal Judiciary confines itself to its constitutionally limited role of adjudicating actual and concrete disputes, the resolutions of which have direct consequences on the parties involved. A corollary to this case-or-controversy requirement is that an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.")(internal citations and quotation marks omitted).

"A case becomes moot when there is no longer an ongoing injury that can be redressed through judicial action because the 'issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.'" *Lamberty*, No. 3:15-cv-378 (VAB), 2018 U.S. Dist. LEXIS 179805, at *12 (quoting *Already, LLC v. Nike, Inc.,* 568 U.S. 85, 91, 133 S. Ct. 721 (2013)(internal citations omitted)). "No matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit, the case is moot if the dispute 'is no longer embedded in any actual controversy about the plaintiffs' particular legal rights.'" *Already*, 568 U.S. at 91 (quoting *Alvarez v. Smith*, 558 U.S. 87, 93, 130 S. Ct. 576, 175 L. Ed. 2d 447 (2009)). "Thus, '[i]f an intervening circumstance deprives the plaintiff of a "personal stake in the outcome of the lawsuit," at any point during litigation, the action can no longer proceed and must be dismissed as moot." *Genesis Healthcare*, 569 U.S. at 72 (internal citation omitted).

However, "[a] case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Knox v. Service Employees International Union*, 567 U.S. 298, 307, 132 S. Ct. 2277, 183 L. Ed. 2d 281 (2012). "'As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot.'" *Chafin*

*v. Chafin*, 568 U.S. 165, 172, 133 S. Ct. 1017, 185 L. Ed. 2d 1 (2013)(quoting *Knox*, 567 U.S. at 307-08).

### A. Plaintiff's Claims for Nominal Damages under § 1983, Attorneys' Fees and Injunctive Relief Keep this Action Alive

In their Notice of Motion to Dismiss the Complaint (ECF No. 20) and Memorandum of Law in Support of their Motion to Dismiss the Complaint (ECF No. 21), Defendants make clear that they are requesting the dismissal of the Complaint in its entirety (ECF No. 1). However, the majority of the focus of the Memorandum of Law is on late fees, with only a page reserved for other prayers for relief. Defendants' argument can be summed up with the sentence "[t]o the extent that the substantive relief sought by Plaintiff Mendez in this action—and *Chaperon*, for that matter—is funding for A.C.'s tuition at the International Institute for the Brain ("iBrain") and transportation through Sisters for the 2024 - 2025 school year, Defendants submit that, in light of the foregoing facts of this record, there is no material dispute remaining (ECF No. 21 at 130). Putting aside the issue of late fees for a moment, several other causes of action and prayers for relief in the Complaint render this mootness argument premature.

The Complaint states, "Defendants, acting under the color of law, violated the rights of the Plaintiff and A.C., as protected under Section 1983," before outlining alleged ways in which their rights were violated. *See* ECF No. 1, ¶¶ 103-107. The Complaint further alleges, "As a direct and proximate result of DOE's wrongful and illegal conduct, Plaintiff and her child have suffered a loss of federally guaranteed rights, including the denial of timely funding for her child's educational placement and services, which has caused undue financial hardship to date and delayed access to critical services." *Id.* at ¶ 108. And further, "Plaintiff and her child have suffered

damages as a result of the Defendants' violations of their rights under the IDEA, as set forth herein, and request damages of $1.00 or any other nominal amount." *Id.* at ¶ 109.

The Third Cause of Action in the Complaint also alleges, in paragraphs 121-124 "Plaintiff, as the prevailing party in her administrative proceedings brought under the IDEA, respectfully seeks reasonable attorneys' fees under 20 U.S.C. § 1415(i)(3)(B)(I). Plaintiff also seeks reasonable attorneys' fees incurred in prosecuting this federal action to enforce the final administrative orders, as permitted under 42 U.S.C. § 1983. Should Plaintiff prevail in this federal action, she will also be a prevailing party under IDEA and 42 U.S.C. § 1983. Plaintiff is entitled to reasonable attorneys' fees, 'fees on fees,' and costs for the time spent and costs incurred in prosecuting this federal action." *See* ECF No. 1, ¶¶ 121-124.

Further, in Relief Requested, section 2, paragraphs c), d,), e), f), g), h), i), j), and k) remain in contention. For the purposes of brevity they will not be quoted verbatim here, but in summary are requests for declaratory judgement, reasonable costs and attorneys' fees for Plaintiff as the prevailing party in the underlying administrative actions, reasonable costs and attorneys' fees for prosecuting this federal action, damages for Plaintiff and A.C. in the amount of $1.00 or some other nominal amount for DOE's violation of their rights while acting under color of law, and late fees per the relevant contracts (ECF No. 1 at 17, ¶ 2).

### i.    <u>Plaintiffs' Claim for Nominal Damages under § 1983 Survives</u>

Nominal damages are able to survive a motion to dismiss. "Moreover, under New York Law, although the evidence of damages may be slight, "[t]hat damages are uncertain, or may not even exist, is an insufficient reason" to grant a motion to dismiss. *See Acumen Re Mgmt. Corp. v. Gen. Sec. Nat. Ins. Co.*, No. 09 Civ. 01796, 2012 U.S. Dist. LEXIS 127809, 2012 WL 3890128, at

*11 (S.D.N.Y. Sept. 7, 2012). *Okla. Police Pension & Ret. Sys. v. United States Bank Nat'l Ass'n*, 291 F.R.D. 47, 71 (S.D.N.Y. 2013).  "In addition, nominal damages are available in a § 1983 action if a plaintiff can show he was denied due process, even 'without proof of actual injury.'" *Carey v. Piphus*, 435 U.S. 247, 266, 98 S. Ct. 1042, 1053, 55 L. Ed. 2d 252 (1978). *Bradley v. Coughlin*, 671 F.2d 686, 690 (2d Cir. 1982).

Here, Plaintiffs seek nominal damages of $1.00 under § 1983.  *See* ECF No. 1 at 17, ⁋ 2) e).  Plaintiffs' § 1983 claim therefore survives.  *See Fantasia v. Montefiore New Rochelle*, No. 19 CV 11054 (VB), 2022 U.S. Dist. LEXIS 107935, at *11 (S.D.N.Y. June 16, 2022)("A plaintiff who seeks nominal damages to redress an injury has standing to pursue her claim in federal court; that is, her claim is not moot.")(citation omitted); *see also  Uzuegbunam v. Preczewski*, 592 U.S. 279, 293, 141 S. Ct. 792 (2021)("We hold only that, for the purpose of Article III standing, nominal damages provide the necessary redress for a completed violation of a legal right.").

### ii.    <u>Plaintiffs' Claim for Declaratory Judgment Survives</u>

Further, under Fed. R. Civ. P. 57 a claim for declaratory judgement is able to survive a 12(b)(1) motion to dismiss.  "The Declaratory Judgment Act provides that '[i]n a case of actual controversy within its jurisdiction … any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.'" *Hoffman v. Am. Inst. of Indian Stud.*, No. 1:21-cv-01105 (BKS/ATB), 2024 U.S. Dist. LEXIS 123611, at *5-6 (N.D.N.Y. July 15, 2024)(quoting 28 U.S.C. § 2201(a)).

"It is well established that 'the Declaratory Judgment Act does not extend the jurisdiction of the federal courts.'" *Krechmer v. Tantaros*, 747 F. App'x 6, 9 (2d Cir. 2018)(quoting *Medtronic.,*

*Inc. v. Mirowski Family Ventures, LLC*, 571 U.S. 191, 196, 134 S. Ct. 843, 187 L. Ed. 2d 703 (2014)(internal quotation marks omitted)).  "Whether there is federal question jurisdiction over a declaratory judgment action depends on whether 'a coercive action brought by the declaratory judgment defendant … would necessarily present a federal question.'"  *Krechmer*, 747 F. App'x at 9.

Here, Plaintiffs seek a declaratory judgment under Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, "Declaring that Defendants violated the Plaintiff's rights and the rights of her child—A.C. … ."  *See* ECF No. 1, ⁋ 11; *see also Id.* at 17, ⁋ 2) h).  This declaration would establish Defendants in violation of federal law, both the IDEA and the Civil Rights Act, and this, in turn, would establish a basis for recovery of the sought-after amounts in controversy.  Moreover, such a declaration would establish, going forward, the DOE's continued, persistent policy of violating the IDEA, a key aspect of Plaintiffs' § 1983 claim.  *See* ECF No. 1, ⁋⁋ 103-105.  Thus, Plaintiffs have shown how such a declaration would help them – in other words, proving what is alleged in the Complaint, that the DOE's refusal to reimburse tuition and transportation is part of an established practice or policy that violates § 1983.  *See cf. Diaz v. United States HUD*, No. 23-397, 2024 U.S. App. LEXIS 5620 (2d Cir. Mar. 8, 2024)(dismissing the plaintiff's request for declaratory judgment as moot where the "Plaintiffs haven't satisfied this requirement because they haven't explained how they would benefit from declaratory relief.")(emphasis removed).

### iii.    **Plaintiffs' Claim for Attorneys' Fees Survives**

Additionally, "courts in this circuit have denied a defendant's motion to strike or to dismiss claims for attorney's fees even though the likelihood that plaintiff would be able to recover attorney's fees is small, because dismissal of such claims at the pleading stage would be premature. *Marino v. N.W. Mut. Life Ins. Co.,* 2001 U.S. Dist. LEXIS 2670, No. 00 Civ. 3212 (MBM), 2001

WL 262574 at *3 (S.D.N.Y. Mar. 14, 2001) (citing, *inter alia, Fort Howard Paper Co. v. William D. Witter, Inc.*, 787 F.2d 784, 794 (2d Cir. 1986)).” *Noury v. St. Paul Fire & Marine Ins. Co.*, 2004 U.S. Dist. LEXIS 27319, at *9 (S.D.N.Y. Mar. 25, 2004).

## II.   LATE FEES

While the remaining pending issues discussed above are more than sufficient to deny Defendants' Motion to Dismiss the Complaint, Plaintiff will also respond to Defendants' arguments on late fees.

### A.   The Exhaustion of Remedies Requirement Does Not Apply to Late Fees in this Case

In arguing that Plaintiffs cannot seek late fees under the relevant agreements, Defendants take the position that this Court has no jurisdiction to hear the claim because Plaintiffs never appealed the IHO or SRO decision at the underlying administrative level and therefore have not exhausted their administrative remedies.  The argument lacks merit.

“Section 1415(i)(2)(A) of the IDEA provides that 'any party aggrieved' by a final state administrative decision may commence a civil action in a state or federal court.”  *A.K v. Westhampton Beach Sch. Dist.*, No. 17-CV-0866(JS)(SIL), 2019 U.S. Dist. LEXIS 167085, at *31 (E.D.N.Y. Sep. 27, 2019)(cleaned up)(internal quotations and citation omitted).  “The Second Circuit has held that parties seeking to enforce favorable decisions under the IDEA have 'neither the responsibility nor the right to appeal the favorable decision by the local hearing officer since they were not aggrieved by [her] decision.'” *A.K*, No. 17-CV-0866(JS)(SIL), 2019 U.S. Dist. LEXIS 167085 at *31 (quoting *Antkowiak ex rel. Antkowiak v. Ambach*, 838 F.2d 635, 641 (2d Cir. 1988) *cert. denied*, 488 U.S. 850, 109 S. Ct. 133, 102 L. Ed. 2d 105 (1988))(other citations and internal quotations omitted).

Under New York regulations, "[a]n appeal to an SRO may be taken by '[a]ny party aggrieved by the findings of fact and the decisions of an impartial hearing.'" *FB v. N.Y.C. Dep't of Educ.*, 923 F. Supp. 2d 570, 588 (S.D.N.Y. 2013)(quoting N.Y. Comp. Codes R. & Regs. tit. 8 § 200.5(k)(1)). Moreover, "a respondent who wishes to seek review of an impartial hearing officer's decision may cross-appeal from all or a portion of the decision by setting forth the cross-appeal in respondent's answer." *FB*, 923 F. Supp. 2d at 588 (quoting N.Y. Comp. Codes R. & Regs. tit. 8 § 279.4(b)).

The "New York Court of Appeals has defined 'aggrieved' as not applying to a party that has successfully obtained a judgment in its favor." *See FB*, 923 F. Supp. 2d at 587 (citing *Parochial Bus Sys. v. Bd. of Educ. of City of N.Y.*, 60 N.Y.2d 539, 544-45, 458 N.E.2d 1241, 470 N.Y.S.2d 564 (1983)("Where the successful party has obtained the full relief sought, he has no grounds for appeal or cross appeal. This is so even where that party disagrees with the particular findings, rationale or opinion supporting the judgment or order below in his favor, or where he failed to prevail on all the issues that had been raised." (citations omitted)).Interpreting the regulations above, *FB* noted, "Despite non-binding authority permitting the cross-appeal of an IHO's failure to decide an issue, this Court declines to adopt such a reading … . The parties do not cite to (and this Court has not found) any legislative history or binding interpretations of the relevant statutes or regulations suggesting this language should not be given its ordinary meaning. The ordinary meaning of "aggrieved" implies harm, not merely failure to help." *FB*, 923 F. Supp. 2d at 588.

The Court went on,

In many cases (and in this case), an IHO's failure to decide an issue for or against a party does not "aggrieve" that party in the ordinary sense of that word. Moreover, the phrase "all or a portion of the decision" implies that cross-appeals lie only from

issues decided, not merely from silence. The Court therefore finds that a party's failure to cross-appeal an issue never reached by the IHO does not necessarily constitute a waiver of its rights to pursue that issue.

*FB*, 923 F. Supp. 2d at 588 (citation omitted).

Drawing from this authority, Judge Torres directly confronted this issue and affirmed that the plaintiff had the right to seek review in the courts of an unappealed IHO decision where the plaintiff was not aggrieved:

> Usually, an "aggrieved" party's failure to appeal any portion of an IHO's decision leads to forfeiture of the issue. *Phillips v. Banks*, 656 F. Supp. 3d 469, 483 (S.D.N.Y. 2023). However, if a party raised an issue before the IHO but was not "aggrieved" by the IHO's resolution of her claim, and thus had no occasion to press the issue before the SRO, the party may raise the issue before a reviewing court. *Id.*; *see also D.N. ex rel. G.N. v. N.Y.C. Dep't of Educ.*, 905 F. Supp. 2d 582, 587-88 (S.D.N.Y. 2012). Because Boffa received "precisely the relief she sought" before the IHO—reimbursement for A.M.'s placement at iBrain and four years of extended eligibility—"she 'had neither the responsibility nor the right' to cross-appeal any portions of the IHO's decision." *D.N.*, 905 F. Supp. 2d at 588 (quoting Antkowiak ex rel. *Antkowiak v. Ambach*, 838 F.2d 635, 641 (2d Cir. 1988)). The Court will, therefore, consider her argument on the merits.

*Boffa v. Banks*, 2025 U.S. Dist. LEXIS 16234, at *12, n.4 (S.D.N.Y. Jan. 29, 2025).

*Boffa* is directly on point and this Court should follow its reasoning and conclusion, adhering to controlling authority from the Second Circuit and finding that Plaintiffs had no occasion to appeal the IHO or the SRO decision, from which they had obtained the relief they were seeking, and therefore had no obligation to exhaust their remedies before seeking relief from this Court.

Here, as *FB* recognized and New York regulations explicitly state, Plaintiffs were not an aggrieved party because Plaintiffs received precisely the relief they were looking for. The IHO IHO found that the DOE had denied A.C. a FAPE, that iBRAIN was an appropriate placement, and that the equities favored Plaintiffs in full reimbursement, with the exception of transportation services, which it reduced to an award of only those services actually used. *See* ECF No. 1-2, at 6-10. Neither Plaintiffs nor Defendants appealed the first two findings, and Plaintiffs only

appealed the IHO's equities determination on reimbursement of transportation costs to services utilized. *See* ECF 1-3, at 8. The first two findings therefore became binding on both parties. *See Id.* at 8. As to the third issue, Plaintiff prevailed on that issue as well as the SRO reversed the IHO and found that the equities did not warrant a reduction and should be based rather on the contract,, awarding the full value of the transportation services contract to Plaintiff. *See Id.* at 9-10.

Under New York regulations and the caselaw above, Plaintiff cannot be considered an aggrieved party because she "has obtained the full relief sought." *See Parochial Bus Sys.*, 60 N.Y.2d at 544-45. Thus, in every sense of the word, Plaintiff was not an "aggrieved party" when she prevailed on the three critical components of the *Burlington*/*Carter* test.

Moreover, a party is not considered an aggrieved party "where [s]he failed to prevail on all the issues that had been raised" but nevertheless "obtained the full relief sought." *See Parochial Bus Sys.*, 60 N.Y.2d at 544-45; *see also FB*, 923 F. Supp. 2d at 587 (citing same). Thus, assuming *arguendo* that Plaintiff did not prevail on the issue of late fees because neither the IHO nor the SRO explicitly addressed them in their respective decisions, Plaintiffs had no basis to appeal to the SRO as an "aggrieved party" because this is only one discrete issue that Plaintiffs did not prevail on, whereas, critically here, Plaintiff *did* prevail on all three prongs of the *Burlington*/*Carter* test. *See* ECF No. 1-2, at 6-10; *see also* ECF 1-3, at 8-10.

Defendants argue that the present case is analogous to *Hidalgo v. Porter*, 21-cv-10794 (JGK) 2023 U.S. Dist. LEXIS 226812 (Dec. 20, 2023). However, that case is clearly distinguishable. *Hidalgo* involved, as Defendants quote, interest that began to accrue more than four years after the filing of the DPC. *See Hidalgo*, 21-cv-10794 (JGK) 2023 U.S. Dist. LEXIS 226812 at *8-9, *12-13. Moreover, that matter involved loans from a third party. 21-cv-10794 (JGK) 2023 U.S. Dist. LEXIS 226812 at *8-9, *12-13. In the present matter late fees are part of

the standard enrollment contracts with iBRAIN and Sisters.  *See* ECF No. 1-1, at 34-39; *see also Id.* at 41-46.  Taken together, the IHO and SRO found that the DOE failed to provide A.C. with a FAPE, that these providers are appropriate, and that equities weighed in the Parent's favor.  *See* ECF No. 1-2, at 6-10; *see also* ECF 1-3, at 8-10.  In order to access this education for her daughter after the failure by Defendants, Parent needed to sign these agreements, expecting that either tuition would be timely or that the late fees would be paid by Defendants.

This bears no resemblance to *Hidalgo*, because the IHO's and SRO's decisions are founded on the contracts themselves.  *Compare* ECF No. 1-2, at 13 (ordering full tuition reimbursement directly to the Private School "within 30 days of submission of a signed, notarized bill encompassing ***tuition costs*** owed by the Parent to the Private School" for A.C.'s attendance at iBRAIN for the 2024-25 school year)(emphasis added) *with Paulino v. N.Y.C. Dep't of Educ.*, 2024 U.S. Dist. LEXIS 132633, at *14-15 (S.D.N.Y. July 24, 2024)("The requirement that the DOE "pay the tuition and transportation costs for the STUDENT'S attendance" is best read as a directive to pay for the total transportation costs incurred during the pendency period.  *Id.*  The FOFD refers generally to transportation costs—not to the transportation costs for services 'actually provided,' or any other such qualification. There is no textual basis to read such a qualification into the order's language.") *and Paulino*, 2024 U.S. Dist. LEXIS 132633 at *14-15 ("Courts in this District applying similar language in pendency orders have interpreted this wording in a manner consistent with this holding.")(collecting cases); *see also* ECF 1-3, at 8-10 (reversing the IHO decision and awarding reimbursement for transportation costs based on the Sisters' agreement).  There is simply no need to appeal either of those decisions to find that Plaintiffs are entitled to late fees under both contracts.  Thus, unlike *Hidalgo*, Plaintiffs were not required to exhaust their administrative remedies.

Moreover, in order to argue that the parents should be entitled to interest on the loans in *Hidalgo*, the parents were required to argue that "the IHO was wrong to conclude that the parents failed to show their financial inability and that the IHO was wrong to impose a remedy of reimbursement to the parents rather than direct funding to iBRAIN and Sisters, which would have obviated the need for a loan." 21-cv-10794 (JGK) 2023 U.S. Dist. LEXIS 226812 at *13-14. "But," as the court recognized, "the parents never exhausted those claims by raising them with the SRO." *Id.* at *14. Here, as demonstrated above, Plaintiffs' claims are based in the contract language itself since both the IHO and SRO decisions are based on same. *See* ECF No. 1-2, at 13 (ordering tuition reimbursement based on "tuition costs"); *see also Paulino*, 2024 U.S. Dist. LEXIS 132633 at *14-15 (holding that administrative orders requiring reimbursement on the basis of "transportation costs" are "best read" as requiring reimbursement for the full value of the contract); *see also* ECF 1-3, at 8-10 (reversing the IHO decision and awarding reimbursement for transportation costs based on the Sisters' agreement). Again, there is simply no need to appeal either of those decisions to find that Plaintiffs are entitled to late fees under both contracts. Unlike *Hidalgo*, Plaintiffs were not required to exhaust their administrative remedies.

**B.** **Plaintiffs Are Entitled to Late Fees under the Relevant Contracts**

Defendants finally argue that Plaintiffs are not entitled to late fees under the relevant administrative orders. This argument is without merit and Plaintiffs should be able to proceed on those claims.

As noted above, as to tuition reimbursement, the IHO decision is clear that Plaintiffs are entitled to tuition under the relevant iBRAIN enrollment agreement, and that agreement expressly provides for late fees. *See* ECF No. 1-2, at 13 (ordering tuition reimbursement based on "tuition costs"); *see also Paulino*, 2024 U.S. Dist. LEXIS 132633 at *14-15 (holding that administrative

19

orders requiring reimbursement on the basis of "transportation costs" are "best read" as requiring reimbursement for the full value of the contract).  The IHO decision specifically contemplates these fees because it states that Plaintiffs must be reimbursed "within 30 days of submission of a signed, notarized bill encompassing tuition costs… ."  *See* ECF No. 1-2, at 13.  Having failed to do so, by operation of the contract, late fees apply from that day forward.  *See* ECF No. 1-1, at 36 ("Late Payment Penalty").

Plaintiffs' claim for late fees is even stronger in the context of transportation.  The SRO decision specifically reversed the IHO who awarded reimbursement of transportation costs for services actually rendered, and chose instead to rely exclusively on the relevant transportation agreement as the sole source of liability for the DOE.  *See* ECF No. 1-3, at 8-10.  Like the iBRAIN agreement, the relevant transportation agreement contains a provision for late fees.  *See* ECF No. 1-1, at 42-43 ("Late Payment Penalty").  Thus, the DOE owes those late fees as well.  In all respects, Defendants' arguments have no merit and their motion to dismiss should be denied.

While it is true that the FOFD does not specifically include late fees.  Nevertheless, the IHO set a time limit of 30 days from the submission of a signed notarized bill for Defendants to pay tuition and transportation costs.  *See* ECF No 1-2 at 13. While the Finding of Facts and Decision set the contractual amount as a cap, it stands to reason that the 30-day limit assigned is a grace period before late fees begin accruing.  This is supported by the SRO, who writes "as the transportation contract provided for a total amount due whether or not the student used the transportation service on a particular day, the parent's submission of documentation of the student's use and times of service is not necessary in this instance. *See* ECF No. 1-3 at 10.  This suggests that the aim of the SRO is to order the terms of the contract to be enforced, which is

supported by the following sentence "to the extent the IHO's decision could be read to limit the award of funding for transportation, the parent's appeal is sustained." *Id.*

Lastly, Defendants make several references to *Chaperon, et al. v. Banks*, et al., 24-cv-5135 (JAV)(SN), largely in their preliminary statement and without substantial support in their argument or citations to caselaw (ECF no. 21 at 7). *Chaperon* and the instant matter arise out of distinct parts of the IDEA, with the former involving enforcement of pendency claims while the latter involved enforcement of a final administrative order. Additionally, there are several plaintiffs in *Chaperon,* while there is only one here. The proceedings are entirely separate, and as relates to late fees the allegations in *Chaperon* have no bearing here.

## <u>CONCLUSION</u>

Based on the preceding, the Plaintiffs ask the Court to deny Defendants' Motion to Dismiss the Complaint, as well as such other, further, and different relief that the Court deems just, proper, and equitable.

Dated:  May 5, 2025
        New York, New York

                                Respectfully submitted,
                                Liberty & Freedom Legal Group, Ltd.
                                *Attorneys for Plaintiffs*

                        By:        */s/ Kenneth Willard*
                                Kenneth Willard Esq.
                                105 East 34th Street #190
                                New York, NY 10016 (646)850-5035
                                ken@pabilaw.org

## <u>Verification of Word Count</u>

 Pursuant to the Local Rules of the District Court for the Southern District of New York and Judge Rochon's Individual Rules of Practice in Civil Cases, the undersigned verifies that the word count of this document, excluding the caption and titles is 6,989, which is less than 8750 and the font is 12 point.


By:   **_/S/ Kenneth Willard_**_____
      Kenneth Willard, Esq.